Estate of Herman D. Bob, Irving J. Bob, Executor v. Commissioner.
Estate of Bob v. Commissioner
Docket No. 111146.
United States Tax Court
1943 Tax Ct. Memo LEXIS 231; 2 T.C.M. (CCH) 315; T.C.M. (RIA) 43303; June 25, 1943
*231 Aaron Holman, Esq., 25 Broadway, New York City, and I. Newton Brozan, Esq., 25 Broadway, New York City, for the petitioner. F. S. Gettle, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This proceeding involves a deficiency in gift tax for the year 1938 in the amount of $2,681.99. The sole issue is whether the decedent made a taxable gift when he, under the circumstances shown in our findings, transferred sundry life insurance policies upon his own life to a corporation, all of the stock of which was owned by him and members of his family or trusts created for his wife and children. Findings of Fact Irving J. Bob, who resides at 235 E. 73rd Street, New York City, is the duly qualified executor of the Estate of Herman D. Bob, who died on September 9, 1941, Herman D. Bob filed a gift tax return for the calendar year 1938 with the collector of internal revenue for the second district of New York. During the taxable year 1938 the decedent was the owner of all the issued and outstanding common capital stock of H. D. Bob Company, Inc., (hereinafter sometimes referred to as the corporation). He also owned 1339 shares of the corporation's first *232 preferred stock out of a total of 5,000 shares issued and 1339 shares of its second preferred stock out of 4,770 shares issued. The remaining shares of the first and second preferred stock of the corporation were owned by members of the decedent's family or held in trust for their benefit. The corporation was organized in 1924 under the laws of the State of New York. It was engaged in the business of manufacturing and selling men's shirts, pajamas, jackets, sportswear and similar articles. During 1938 and 1939 &nd prior thereto the decedent was the president of the corporation. At the end of 1938 the corporation had outstanding notes payable to Guaranty Trust Company of New York in the amount of $250,000; the Bank of Manhattan Company in the amount of $250,000; Bankers Trust Company of New York in the amount of $250,000; and the Chase National Bank of the City of New York in the amount of $250,000. It also owed Sears, Roebuck & Co. $250,000. The decedent had entered into an agreement with the Guaranty Trust Company and Bank of Manhattan personally guaranteeing the payment of the amount owed to each of them. The notes, aggregating $1,000,000 payable to the banks, matured December *233 31, 1938. At this date the corporation, although solvent, was unable to pay its debts as they matured and was close to insolvency on the basis of enforced liquidation. Late in November or early in December, 1938, decedent and an attorney representing him and the corporation commenced negotiations with Donald M. Nelson of Sears, Roebuck & Co. and with representatives of the four creditor banks for an extension of the corporation's loans. The banks insisted that Sears, Roebuck & Co. subordinate its claim to that of the four banks and that the decedent irrevocably assign to the corporation certain policies of insurance on his own life. The notes were not renewed until these conditions were met. During the negotiations counsel for the corporation and the decedent offered to have the beneficiary clauses of the policies changed so as to make the corporation beneficiary. They also proposed a plan to trustee the proceeds of insurance under an agreement with the creditor banks; but the banks refused to accept either proposal and insisted upon an absolute assignment of the policies to the corporation. After obtaining the consent of the beneficiaries the decedent on December 28, 1938, irrevocably *234 assigned to the corporation insurance policies of the description, face amount and value, as follows: Face Amount
Value at
Policy No.
Company
of Policy
12/28/38
932576
Union Central LifeInsurance Co.
$100,000.00
$1,239.26
1150934
Union Central LifeInsurance Co.
100,000.00
1,537.57
601222
ConnecticutMutual Life Insur. Co.
50,000.00
1,042.27
5872760
Prudential Insurance Co. of America
50,000.00
1,909.72
Prudential Insurance Co. of America
10,000.00
556.31
9896863
New York LifeInsurance Co.
25,000.00
1,000.31
6258085
New York LifeInsurance Co.
5,000.00
3,339.70
4425572
New York LifeInsurance Co.
3,000.00
2,003.82
4335355
New York LifeInsurance Co.
3,000.00
2,003.82
1247243
Northwestern Mutual Life Insurance Co.
10,000.00
7,131.60
966760
Northwestern Mutual Life Insurance Co.
2,000.00
1,426.32
1247244
Northwestern Mutual Life Insurance Co.
10,000.00
7,131.60
2942843
Mutual Life Insurance Co. of New York
2,000.00
36.67
2036344
Mutual Life Insurance Co. of New York
5,000.00
359.91
2942841
Mutual Life Insurance Co. of New York
4,000.00
72.33
2461573
Mutual Life Insurance Co. of New York
10,000.00
952.16
2462403
Mutual Life Insurance Co. of New York
4,000.00
380.40
2942845
Mutual Life Insurance Co. of New York
4,000.00
72.22
348203
John Hancock Mutual Life Ins. Co.
3,000.00
2,051.94
$400,000.00
$34,257.04
*235 Each assignment was signed by the corporation and by Herman D. Bob and each contained a provision reading substantially as follows: For good and valuable consideration furnished by Guaranty Trust Company of New York. The Chase National Bank of the City of New York. Bank of the Manhattan Company and Barkers Trust Company, all of New York, New York, the undersigned have agreed and do hereby agree that without the prior consent in writing of said banks, H. D. BOB COMPANY, INC. will not be removed as such beneficiary, and do hereby direct the [named] Insurance Company not to agree to a further change of the beneficiary under said policy without such consent of said banks. Thereafter on January 23, 1939, the corporation executed new notes to each of the four creditor banks in the amount of $250,000, maturing on December 29, 1939. These notes were subsequently satisfied by the corporation. On January 23, 1939, the corporation agreed, in writing, that it would not surrender or assign the insurance policies or borrow upon them without the prior written consent of the banks. The decedent filed a gift tax return on March 15, 1939 reporting a "Gift to Corporation" in the amount of $34,257.04. *236 No tax was shown to be due or paid, decedent claiming that he had not made a taxable gift because the "donor owns all the common stock." In computing the gift tax liability of the decedent the respondent included the amount of $34,257.04 as a taxable gift, allowing one $5,000 exclusion. Opinion Petitioner contends that the assignment of the policies of life insurance to the corporation did not constitute a gift for three reasons: (1) that it was involuntary; (2) that there was consideration to support the transfer; and (3) that there was an absence of donative intent. Apparently the theory, as expressed in the return, that no gift had been made because the donor owned all of the recipient's common stock, has been abandoned. Cf. Robert H. Scanlon, 42 B.T.A. 997. Respondent contends that the irrevocable assignment of the policies by the decedent without retaining any of the legal incidents of ownership therein constituted a taxable gift in the amount of the cash surrender value. He admits that petitioner's contention "might be conclusive of the question if the assignment had been a temporary one for the purpose of protecting the creditor banks until *237 the payment of the corporation's outstanding indebtedness to the banks." He argues, however, that there was no consideration whatever for the "unconditional" assignment of the insurance policies to the corporation and that the "irrevocable" assignment was not involuntary since the creditor banks had no interest in the ownership of the policies after the corporation's indebtedness to them had been satisfied. In our judgment it is unnecessary to distinguish between the legal effect of a "temporary" and an "irrevocable" assignment. The record shows clearly that the creditor banks and not the decedent laid down the conditions upon which the notes would be renewed. One of these was that the decedent should "irrevocably" assign the policies of insurance on his life to the corporation. More temporary methods of utilizing the insurance policies as collateral security for the loans, such as changing the beneficiary clauses in favor of the corporation or trusteeing the proceeds of insurance under an agreement, were proposed by decedent and his counsel but were refused by the banks. It thus appears that the "irrevocable" assignment of the policies was not a voluntary act, Humphrey v. Commissioner, 91 Fed. (2d) 155, *238 prompted by donative impulses, but that it was a condition precedent to the renewal of the notes imposed by the creditor banks. It is idle therefore to speculate whether a "temporary" assignment could have accomplished the same purpose. A gift has been defined as a voluntary transfer of property by one to another without any consideration or compensation therefor. Noel v. Parrot, 15 Fed. (2d) 669; Blair v. Rosseter, 33 Fed. (2d) 286; Fitch v. Helvering, 70 Fed. (2d) 583; Bothin Real Estate Co. v. Commissioner, 90 Fed. (2d) 91; Robert H. Scanlon, supra. An essential characteristic of a gift is that the transfer be without consideration. If there is consideration to the transfer it is not a gift. Noel v. Parrot, supra; 28 C.J. 621. In the instant case not only was the assignment of the policies to the corporation not prompted by generosity, but it affirmatively appears that it was made upon consideration that the four creditor banks renew the notes of the corporation. Decedent owned all of the *239 common stock of the corporation and a part of its preferred stock, the remainder being owned by members of his family. Thus he had a very substantial interest in its success. Moreover he was a guarantor for it in the amount of at least $500,000. The corporation was unable to pay the notes, was on the verge of insolvency and suits on the notes would probably have resulted in its being thrown into bankruptcy. In this situation the forbearance of the creditor banks and the renewal of the notes was sufficient consideration for the transfer of the insurance policies to the corporation. Missouri Pacific Railroad Co. v. Texas & Pacific Ry. Co., 282 Fed. 61. It is well settled that a consideration is valid even though it moves to a third party. Bromfield v. Trinidad Nat. Investment Co., 36 Fed. (2d) 646; Restatement of Law of Contracts, Sec. 75(2). Respondent argues that even though there was some consideration for the transfer the evidence does not show that it was full and adequate. He says: "Since the indicia of consideration, if any, are not capable of being valued in money or money's worth, the entire value of the *240 policies at the date of assignment should be taxed." He also insists that the fact the decedent chose to report the transfer as a "gift" to the corporation militates substantially against the present contention of his executor. We do not agree with either contention. As to the first we think that the consideration received by the transferor - the renewal of the notes of the corporation and the saving of a valuable asset to him and his family as well as the postponing of the assertion of a liability against him as guarantor - was at least equal to the value of the policies. As to the other the transferor merely answered truthfully the question whether he had irrevably assigned life insurance policies "without retaining any of the legal incidents of ownership therein", calling attention to the fact that he "owned and still owns" all of its issued common stock. It is evident, as pointed out earlier in this opinion, that the transferor was apparently anticipating that the courts would hold, as was held in Robert H. Scanlon, supra, that the interest of a sole stockholder in a corporation's property gives him a "corresponding compensation for the transfer, *241 which prevents it from being a true gift within the meaning of the gift tax law." This theory is no longer relied upon and there is no need to discuss it. It is sufficient for present purposes to state that in our judgment the mere fact that the transfer was reported as a gift did not make it one nor does it justify us in ignoring the evidence which clearly shows that no gift was made. Decision will be entered for the petitioner.